UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| WILLIAM J. HIMES, ) | Case No. 4:10CV2304 |
| ) | |
| Petitioner, ) | JUDGE LESLEY WELLS |
| ) | |
| v. ) | Magistrate Judge George J. Limbert |
| ) | |
| MICHELE EBERLIN MILLER, ) | |
| Warden, Belmont Correctional Institution ) | |
| ) | **REPORT AND RECOMMENDATION** |
| Respondent. ) | **OF MAGISTRATE JUDGE** |
| ) | |

On June 23, 2010, William J. Himes ("Petitioner") filed a petition for writ of habeas corpus in this Court pursuant to 28 U.S.C. § 2254. ECF Dkt. #3. Petitioner seeks relief from a judgment of conviction entered by the Mahoning County, Ohio Court of Common Pleas for two counts of complicity to rape. ECF Dkt. #13-3. On February 3, 2011, Warden Michele Eberlin Miller ("Respondent") filed a motion to dismiss. ECF Dkt. #13. On March 7, 2011, Petitioner filed a response to Respondent's motion. ECF Dkt. #14. This case was referred to the undersigned to issue a Report and Recommendation. ECF Dkt. #9. For the following reasons, the undersigned recommends that the Court DISMISS the instant petition WITH PREJUDICE. ECF Dkt. #3.

## I.  FACTUAL BACKGROUND

The Seventh District Court of Appeals of Ohio set forth the facts of this case on direct appeal. These binding factual findings "shall be presumed to be correct," and Petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. §2254(e)(1); *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998), cert. denied, 119 S.Ct. 2403 (1999). As set forth by the Seventh District Court of Appeals, the facts are:

> {¶3} . . . The victim testified that on June 26, 2006, after drinking beer at home, she decided to walk to a nearby bar on the corner of Belle Vista Avenue in Youngstown. (Tr. 246-248). She estimated that she arrived between 10:00 and 11:00 p.m. and that she consumed six to eight beers at the bar for a total of eight to ten beers. (Tr. 248, 253).

{¶4} The victim sat near a man, later identified as appellant, whom she believed she saw one other time and whom she believed lived across the street. (Tr. 266, 272, 274). She conversed with appellant, and they began talking to a man named Tony, who sat further down the bar. (Tr. 249). The victim disclosed that the three of them left together in Tony's car at 1:00 a.m. in order to look for marijuana. (Tr. 250).

{¶5} She testified that at the first stop, appellant moved to the front seat while Tony was in a house. Appellant unsuccessfully asked her for oral sex. (Tr. 252-253). At the second stop, appellant again moved to the front seat after Tony exited the vehicle. She testified that appellant tried to force her head down, but she said no and turned her head. (Tr. 254-255). She variously testified that she did perform oral sex, that she did not perform oral sex, and that he managed to get his penis in her mouth at one point. (Tr. 255, 315, 322, 347).

{¶6} When Tony appeared, she asked to go home, and he responded that there was one more stop in the search for marijuana. (Tr. 256). However, Tony then pulled the vehicle into some woods. She testified that they made her take her clothes off even though she was saying no and crying. (Tr. 257, 327). She stated that Tony made her perform oral sex on him. (Tr. 268, 330).

{¶7} At this point, she made a run for the road, but Tony tackled her before she could escape. (Tr. 258). He spread her legs so far, they felt like they would break, which is exactly what he threatened to do, stating that he was Mafia. (Tr. 258). Appellant voiced that they should leave her there, but Tony dragged the victim back through briars and put her in the back seat. (Tr. 259).

{¶8} When she continued to fight, Tony pointed a gun at her and threatened her life and the lives of her husband and son. (Tr. 260). She testified that appellant placed his finger in her vagina and helped guide Tony's penis. (Tr. 261, 319-320, 336). She could not remember if Tony digitally penetrated her. She testified that Tony then raped her vaginally, while appellant held her shoulders and masturbated himself. (Tr. 261). When it was over, Tony dropped her off by the bar. (Tr. 265).

{¶9} The victim arrived at the emergency room at 6:25 a.m. (Tr. 460). She was very upset and had to be sedated. (Tr. 461). Her clothes were wet and dirty. (Tr. 462). She was also very dirty and disheveled and had scratches, abrasions, and bruises all over her body. (Tr. 475-476). She had pain in her legs, hips, groin, back, and vaginal area. (Tr. 469, 482-483). Besides being red and tender with abrasions, her vaginal area contained debris, which appeared to include briars. (Tr. 482-483). Multiple photographs were presented of the victim's condition.

{¶10} The victim reported to a sexual assault nurse examiner that she had been sexually assaulted by two males, whom she referred to as Tony and "the guy across the street." The victim specified that Tony penetrated her vagina with his penis, both men penetrated her vagina with their fingers, and she performed oral sex on both men. (Tr. 467-468).

{¶11} The victim provided police with the following description of the unnamed man: white male, short gray hair, 5'4" to 5'5", medium build, mid-forties, wears tiedyed T-shirts, and was wearing long cargo shorts, sandals and a fisherman's hat. (Tr. 452, 468). After speaking to the bartender and bar owner, the investigating officer believed that the unnamed assailant was named Bill. (Tr. 426, 443). The officer started running searches of all people named Tony, Anthony, William, or Bill

>  that lived in the neighborhood and matched the descriptions provided. (Tr. 425). When she found appellant's name, his features matched the victim's description. (Tr. 425). Thus, she compiled a photographic line-up for the victim's viewing. The victim identified appellant through his photograph, and later from the witness stand. (Tr. 266, 426).
>
> {¶12} The investigator made an appointment for appellant to be interviewed. He gave a statement that the victim was initially compliant with Tony's advances but soon asked Tony to stop. When Tony re-fused to stop, appellant stated that he left the vehicle because he felt uncomfortable with the situation. He denied that there was any sexual activity between himself and the victim. The DNA he provided excluded him as being the source of the semen found on the victim's vaginal and rectal swabs. (Tr. 360, 383-384). However, his DNA was consistent with the semen found inside the victim's jeans; the victim's DNA and another male's DNA were discovered in the jeans as well. (Tr. 361-363, 383).

ECF Dkt. #13-10 at 2-4.

## II. PROCEDURAL BACKGROUND

### A. Trial Court Conviction

On March 15, 2007, the prosecuting attorney for Mahoning County, Ohio filed a six-count indictment against Petitioner. ECF Dkt. #13-1 at 1-2. On June 17, 2008, a jury rendered a verdict finding Petitioner guilty of one count of complicity to rape digitally and one count of complicity to rape vaginally, both in violation of Ohio Revised Code § 2907.02(A)(2)(B). ECF Dkt. #13-4 at 5-6. The trial court sentenced Petitioner to 5 years of imprisonment for the complicity to rape digitally conviction and an additional 5 years of imprisonment for the complicity to rape vaginally conviction, with the sentences to run consecutively. ECF Dkt. #13-5 at 1-2. The trial court also imposed a five-year term of post-release control. *Id.* at 3.

### B. Direct Appeal

On July 10, 2008, Petitioner, through counsel, filed a notice of appeal to the Seventh District Court of Appeals. ECF Dkt. #13-6. On March 13, 2009, Petitioner filed a brief on the merits raising the following assignments of error:

> Assignment of Error One
>
> **The Appellant's Sixth Amendment right to effective trial counsel was violated when said trial counsel failed to object to the trial court's 1) failure to properly notify the Appellant of the Complicity to Rape charges as addressed in Assignment of Error Two; 2) failure to properly object to improper conviction due to a missing finding of fact and element by the jury as addressed in Assignment of Error Three; 3) and, failure to properly object to Appellant's consecutive sentence as addressed in Assignment of Error Four.**

-3-

> Assignment of Error Two
>
> **The Appellant's constitutional right to due process was violated by the Appellee's failure to properly notify him that he would be facing Complicity charges regarding the criminal offenses of Rape. Because no objection was made by trial counsel to the lack of notice issue in the matter at hand, the Doctrines of Ineffective Assistance of Counsel and Plain Error apply.**
>
> Assignment of Error Three
>
> **The Appellant's conviction and sentence for the offenses of Complicity to Rape are improper because the jury did not make the necessary finding that the offense – Rape – had actually been committed as required by RC 2923.03. Therefore, the Appellant's conviction is not only void, but is void ab initio. Further, there was insufficient evidence presented by the Appellee to prove that the Appellant was guilty of Complicity to Rape – "Digitally" as stated on the verdict form.**
>
> Assignment of Error Four
>
> **The Appellant's federal and state constitutional rights to be free from double jeopardy were violated when he was convicted of two counts of Complicity to Rape which allegedly resulted from one single act. Furthermore, to be sentenced to serve two prison terms, consecutively, for the Complicity to Rape, further violates the Appellant's right to be free from double jeopardy. Finally, because defense counsel failed to object to the aforementioned constitutional violations, the Appellant was not afforded the Sixth Amendment right to be represented by effective counsel.**

ECF Dkt. #13-7.

On December 4, 2009, the Seventh District Court of Appeals found that Petitioner's merger argument had merit since the two complicity to rape counts were allied offenses of similar import that were not committed separately or with separate animus. ECF Dkt. #13-10. The appellate court thus modified Petitioner's conviction and sentence to show one conviction for complicity to rape with one five-year sentence. *Id*.

On December 11, 2009, the State of Ohio filed an application for reconsideration pursuant to 26(A) of the Ohio Rules of Appellate Procedure in the Seventh District Court of Appeals. ECF Dkt. #13-11. The State requested that the appellate court reconsider its analysis dealing with whether the two complicity to rape counts merged. *Id*. On January 22, 2010, the appellate court denied the application for reconsideration. ECF Dkt. #13-13.

On January 15, 2010, the State of Ohio filed a notice of appeal to the Supreme Court of Ohio. ECF Dkt. #13-14. The State of Ohio filed a memorandum in support of jurisdiction explaining why the case was of great public or general interest that presents a substantial constitutional question with regard to the merger of the complicity to rape counts. ECF Dkt. #13-15.

On March 10, 2010, the Mahoning County Court of Common Pleas modified its previous entry regarding Petitioner's conviction and sentence to show one complicity to rape conviction and one five-year sentence. ECF Dkt. #13-17.

On April 14, 2010, the Supreme Court of Ohio dismissed the State of Ohio's appeal as not involving a substantial constitutional question. ECF Dkt. #13-16.

While the State of Ohio appealed to the Supreme Court of Ohio, Petitioner did not file an appeal to the Supreme Court of Ohio.

### C.  Federal Habeas Corpus Petition

On June 23, 2010, Petitioner filed the instant petition seeking relief from his state court conviction. ECF Dkt. #3. Petitioner presents the following grounds for relief:

> **GROUND ONE**: Appellant's 6th Amendment rights to effective trial counsel were violated.
>
> **Supporting Facts**: Trial Counsel failed to object to the following two errors, which were plain errors.
>
> **GROUND TWO**: The Appellant's 5th and 14th Amendment rights to due process and his 6th Amendment right to be informed of his charge was violated.
>
> **Supporting Facts**: His rights were violated because the prosecution failed to notify him that he would be facing complicity charges regarding the criminal offenses of rape. Because no objection was made by trial counsel to the lack of notice in the issue in the matter at hand, the doctrines of ineffective assistance of counsel and plain error apply.
>
> **GROUND THREE**: Appellant's 5th and 15th Amendment rights to due process and 6th Amendment right to a jury were violated, along with the 5th Amendment rights to a jury to determine a crime was committed.
>
> **Supporting Facts**: The Appellant's conviction and sentence for the offenses of complicity to rape are improper because the jury did not make the necessary finding that the offense – rape – had actually been committed as required by the 5th, 6th, and

> 14th Amendments. tehrefore[sic], the Appellant's conviction is not only void, but ab initio. Furthermore, there was insuffecient[sic] evidence presented by the Appellee to prove that the Appellant was guilty of complicity to rape – 'digitally' – as stated on the verdict form.' This is against the Masifest[sic[ weight of evidence.

ECF Dkt. #3. On Novem

On February 3, 2011, Respondent filed the instant motion to dismiss. ECF Dkt. #13. On March 7, 2011, Petitioner filed a response to the motion to dismiss. ECF Dkt. #14.

### III. PROCEDURAL BARRIERS TO REVIEW

A petitioner must overcome several procedural barriers before a court will review the merits of a petition for a writ of federal habeas corpus. As Justice O'Connor noted in *Daniels v. United States*, "Procedural barriers, such as statutes of limitations and rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim." 532 U.S. 374, 381 (2001); *see also United States v. Olano*, 507 U.S. 725, 731 (1993).

As a general rule, a state prisoner must exhaust all possible state remedies or have no remaining state remedies before a federal court will review a petition for a writ of habeas corpus. 28 U.S.C. § 2254(b) and (c); *see also Baldwin v. Reese*, 541 U.S. 27, 29 (2004). The exhaustion doctrine requires both that a claim be presented under the same theory to the state and federal courts and that a federal habeas petitioner give the highest court in the state in which he was convicted a full and fair opportunity to rule on his claims. *O'Sullivan v. Boerckel,* 526 U.S. 838, 844-848 (1999); *Williams v. Bagley*, 380 F.3d 932, 967 (6th Cir. 2004).

"If a claim was fairly or properly presented in state court, the federal court must ascertain if state remedies are still available by which state courts may consider the claim." *Liddy v. Gansheimer*, No. 1:08CV2122, 2010 WL 148132, at *7 (N.D. Ohio Jan. 8, 2010), unpublished. If state remedies remain, the claim is deemed unexhausted and the state courts must be given an opportunity to consider the claim before the federal court can consider it. *Id*., citing *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). If state remedies no longer remain and the petitioner is therefore precluded from returning to the state court to present the claim, exhaustion is not the issue, but the claim is deemed procedurally default or waived. *Liddy*, 2010 WL 148132, at *7, citing *Deitz v. Money*, 391 F.3d 804, 808 (6th Cir. 2004).

Respondent asserts that Petitioner has not fully exhausted his grounds for relief because although he never filed a notice of appeal to the Supreme Court of Ohio, and no longer can do so, he may still file a motion for a delayed appeal to that court. ECF Dkt. #13 at 11. Respondent asserts that because this avenue of state relief is still available, the Court should find that Petitioner has failed to exhaust his state remedies and dismiss his federal habeas corpus petition without prejudice. The undersigned notes that at least one Court in this District has held that the filing of a motion for delayed appeal to the Supreme Court of Ohio is not an "available" remedy within the meaning of 28 U.S.C. § 2254(c) and therefore a federal habeas petitioner is not required to file a motion for delayed appeal in order to exhaust his federal habeas claims. *See Mills v. Hudson*, No. 3:08CV1974, 2009 WL 2232858, at *6 (N.D. Ohio July 22, 2009)(finding that since petitioner has no right to *raise* his actual claims in the motion for delayed appeal, but must first petition the court for *permission* to raise the claims, it is not an "available" remedy under 28 U.S.C. § 2254(c), which states that a state remedy is "available" if petitioner has the right under state law to "raise...the question presented"). Other courts have held that a petitioner's federal habeas claims are not exhausted because he may still file a motion for delayed appeal in the Supreme Court of Ohio and therefore still has a potential remaining state avenue of relief. *Williams v. Bobby*, No. 1:06CV2032, 2007 WL 2156402, at *7 (N.D. Ohio, July 25, 2007), unpublished (third and fourth grounds for relief not exhausted because petition still had remedy of motion for delayed appeal to Supreme Court); *Hennis v. Warden, Chillicothe Correctional Inst.*, No. 3:10CV202, 2011 WL 796197, at *3 (S.D. Ohio Feb. 8, 2011); *Moore v. Erwin*, No. 1:02CV850, 2005 WL 1073371, at *2, (S.D. Ohio Apr. 18, 2005), unpublished ("'[r]equiring petitioner to pursue a delayed appeal in the state courts prior to filing a federal habeas corpus petition would not be futile and will serve the interests of federal-state comity by giving the Ohio appellate courts the opportunity to address petitioner's claims on the merits."); *Raver v. Brunsman*, No. 2:06CV952, 2007 WL 2670060, at 89-*10 (S.D. Ohio Sept. 7, 2007), unpublished (petitioner not excused from exhausting claims before Ohio Supreme Court simply because that court may be unlikely to grant his motion for delayed appeal).

Previously, this Court issued a Memorandum Opinion and Order adopting the undersigned's Report and Recommendation on a similar issue. *Gordon v. Bradshaw*, No. 1:04CV2299, 2007 WL

496367, (N.D. Ohio, Feb. 12, 2007), unpublished. In that case, the Court adopted the undersigned's Report and Recommendation suggesting that the Court excuse the petitioner's failure to exhaust as futile when the petitioner failed to file a direct appeal or a motion for delayed appeal to the Ohio Supreme Court. *Id.* at \*2, citing *Dickerson v. Mitchell*, 336 F.Supp.2d 770, 807 (N.D. Ohio 2004), *reversed on other grounds, Dickerson v. Bagley*, 453 F.3d 690 (6th Cir. 2006). In *Gordon*, the undersigned recommended that the Court find it futile for the petitioner to return to the Ohio Supreme Court with a motion for delayed appeal because even the respondent had conceded that the Ohio Supreme Court would likely deny the petitioner leave to file a delayed appeal due to the length of time that had passed since his conviction and because the petitioner had counsel during that time. *Gordon,* 2007WL496367, at \*12, citing and quoting *Dickerson*, 336 F.Supp.2d at 807.

However, while recommending that the Court excuse the petitioner's failure to exhaust in *Gordon*, the undersigned further recommended that the Court find that the petitioner had procedurally defaulted the ground upon which exhaustion was recommended excused. *Gordon,* 2007WL496367, at \*13. The undersigned explained that a federal habeas court is barred from considering issues that could have been raised in the state courts, but were not, and which may not be presented to those state courts due to procedural default or waiver. *Engle v. Isaac*, 456 U.S. 107 (1982). A habeas petitioner has the burden of overcoming this bar by showing cause for the default and actual prejudice. *Murray v. Carrier*, 477 U.S. 478 (1986); *Fornash v. Marshall*, 686 F.2d 1179 (6th Cir.1982), *cert. denied*, 460 U.S. 1042 (1983). Normally, a federal habeas court will consider default in the state courts to have occurred if the last state court rendering a decision makes a plain statement of such state procedural default. *Harris v. Reed*, 489 U.S. 255 (1989). However, no such statement is necessary if the relevant issues were not presented at all to the state court(s). *Id*. at 263, n. 9. Moreover, procedural default may bar a claim that is not necessarily barred by exhaustion. *Broom v. Mitchell*, 441 F.3d 392, 399 (6th Cir. 2006).

The undersigned further noted in *Gordon* that the failure of a state inmate to appeal a claim to the Supreme Court of Ohio constitutes a procedural default. *Gordon*, 2007WL496367, at \*13, citing *Barkley v. Konteh*, 240 F.Supp.2d 708 (N.D.Ohio 2002). In addition, Ohio law holds that the

failure to present a claim to either a Court of Appeals or to the Ohio Supreme Court constitutes a waiver of the claim. *State v. Broom*, 40 Ohio St.3d 277, 288-289, 533 N.E.2d 682 (1988); *State v. Moreland*, 50 Ohio St.3d 58, 62, 552 N.E.2d 894 (1990). A court may raise the issue of procedural default sua sponte. *Thompson v. Anderson*, No. 1:08CV2913, 2010 WL 4026121, at 8 (N.D. Ohio Oct. 13, 2010)("The United States Supreme Court and the Sixth Circuit agree that federal habeas corpus courts may raise procedural default sua sponte. *Day v. McDonough*, 547 U.S. 198, 209-10, 126 S.Ct. 1675, 164 L.Ed.2d 376 (2006); *Lorraine v. Coyle*, 291 F.3d 416, 426 (6th Cir.2002); *Elzy v. United States*, 205 F.3d 882, 886 (6th Cir.2000)").

As in *Gordon*, Petitioner in this case failed to comply with the 45-day time requirement for filing a direct appeal to the Ohio Supreme Court. *See* Ohio Sup.Ct.R. II, section 2(A)(1)(a). Moreover, the Ohio Supreme Court would most likely deny Petitioner leave to file a delayed direct appeal at this juncture. Accordingly, and as in *Gordon*, the undersigned recommends that the Court find that the first three *Maupin* criteria for procedural default are met as Petitioner has failed to comply with the state court's procedural rules, the State court would actually enforce those rules if they had been given the opportunity to do so, and the waiver doctrine constitutes an adequate and independent state ground upon which the State court can foreclose relief.

Therefore, in order for this Court to nevertheless address Petitioner's grounds for relief, Petitioner must meet the fourth element of *Maupin* by presenting cause for his procedural default and resulting prejudice should the Court not examine this ground for relief. " 'Cause' under the cause and prejudice test must be something external to the petitioner, something that cannot fairly be attributed to him." *Coleman*, 501 U.S. at 754. To show cause, a petitioner must demonstrate "some objective factor external to the defense" impeded his efforts to raise the issue as required by each relevant procedural rule. *Id.* at 753. To show prejudice, a petitioner must show that the errors he alleged created not merely a possibility of prejudice, but that the errors worked to his "actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Frady*, 456 U.S. 152, 170. If a petitioner cannot establish both cause for his default and actual prejudice, the petitioner cannot have his claim considered unless he shows that he was actually innocent of the

-9-

crime for which he was convicted. *Bousely v. United States*, 523 U.S. 614, 622 (1998).

In the instant case, Petitioner asserts that because the State of Ohio appealed the modification of his conviction and sentence to reflect one conviction of complicity to rape and one five-year sentence, he was not required to appeal the other claims since it would be a waste of time and resources. ECF Dkt. #14. He cites no law or legal support for such a proposition and the fact that the State of Ohio appealed the merged convictions does not negate Petitioner's duty to appeal his grounds for relief to the Supreme Court of Ohio. Moreover, although he cites to caselaw regarding the fundamental miscarriage of justice exception, Petitioner does no more than generally state that the facts of his case "reveal significant questions as [to] the Petitioner's guilt." ECF Dkt. #14 at 3. In addition, it is well established that a pro se petitioner does not show cause to excuse a procedural default merely based on his pro se status or ignorance of his rights. *Hannah v. Conley*, 49 F.3d 1193, 1197 (6th Cir.1995).

Furthermore, the miscarriage of justice exception does not apply in the case sub judice because Petitioner has not presented any new reliable evidence to support an assertion of innocence that would allow this Court to consider his claims in spite of his procedural default. Accordingly, a miscarriage of justice will not occur if the Court declined to review these claims on the merits. *Welch v. Burke*, 49 F.Supp.2d 992, 1007 (E.D.Mich.1999).

## IV.   CONCLUSION AND RECOMMENDATION

For the foregoing reasons, the undersigned RECOMMENDS that the Court GRANT Respondent's motion to dismiss (ECF Dkt. #13), but DISMISS the instant petition in its entirety WITH PREJUDICE.

Date: May 23, 2011        */s/George J. Limbert*
                           GEORGE J. LIMBERT
                           UNITED STATES MAGISTRATE JUDGE

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this notice. Fed. R. Civ. P. 72; L.R. 72.3. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).